Presented to the Court by the foreman of the Grand Jury in open Court, in the presence of the Grand Jury and FILED in the U.S. DISTRICT COURT at Seattle, Washington.

_____ May 14 _____ 20 25

Ravi Subramanian, Clerk

By_____ Deputy

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff

v.

DARYLE JAWON RUTHERFORD
a/k/a "DJ RUTHERFORD",

Defendant.

NO. **CR25-089** JHC

**INDICTMENT**

The Grand Jury charges that:

## OVERVIEW

1.     DARYLE JAWON RUTHERFORD, a/k/a "DJ RUTHERFORD," lied to obtain millions of dollars in real estate financing, including hard money loans and seller carry-back loans. RUTHERFORD and his agents claimed that RUTHERFORD's businesses—Graykey Equity Properties LLC and its affiliates—owned and operated adult family homes (AFHs) throughout the country. RUTHERFORD and his agents told sellers that Graykey would convert the properties he purchased into AFHs or other businesses to sell for a significant profit. In his dealings with lenders and sellers, RUTHERFORD and

Indictment - 1
*United States v. Rutherford*
USAO No. 2023R01190

his agents misrepresented the nature of RUTHERFORD's businesses, provided false financial information (including doctored bank statements), used straw purchasers, and made other false statements and promises material to the victims' decisions to loan money to RUTHERFORD's companies. Instead of using the funds for the stated purposes, RUTHERFORD used portions of the loan proceeds to pay management fees to his own companies and to fund unrelated projects. RUTHERFORD then defaulted on each of the loans, leaving the sellers with millions of dollars in losses.

2.      Throughout this scheme, RUTHERFORD obtained more than $40 million in loans for properties in Arizona, Washington, and California. Approximately $13 million of those loans were for properties located in Washington State. RUTHERFORD's subsequent defaults on those loans caused losses to Washington seller victims that totaled more than $6 million.

## COUNTS 1–5

### (Wire Fraud)

**A.      *The Scheme and Artifice to Defraud***

3.      Beginning on or about March 1, 2021, and continuing through at least May 14, 2025, in King County, within the Western District of Washington, and elsewhere, DARYLE JAWON RUTHERFORD, together with others known and unknown to the Grand Jury, aiding and abetting each other, with intent to defraud, knowingly devised a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations and promises.

4.      The essence of the scheme and artifice to defraud was using fake documents and false and misleading information to convince victim sellers and lenders to grant RUTHERFORD's companies significant real estate backed loans that RUTHERFORD's companies could not, and did not, repay, causing financial harm to the victims.

Indictment - 2
*United States v. Rutherford*
USAO No. 2023R01190

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**B.    Background**

5.    Adult family homes (AFH) are residential homes licensed to care for up to six non-related residents, typically older adults who need assistance with daily living tasks. AFHs provide room, board, laundry, necessary supervision, and help with activities of daily living, personal care, and social services. Someone desiring to operate an AFH in Washington must obtain a license and undergo training.

6.    Under Washington State law, all AFH owners / operators are required to apply for licensing through Washington's Department of Social and Health Services. The application entails a background check, specific training requirements, and final certification. If a new owner purchases an existing AFH, they must file a Change of Ownership Form (CHOP) and submit a new application as an AFH operator.

7.    Graykey Equity Properties LLC ("Graykey") advertised itself as a California-based real estate investment company with affiliates in Washington State and Arizona. Graykey claimed that it purchased residential homes and business properties, turned them into AFHs or drug rehabilitation facilities or upgraded existing AFHs and then re-sold them for profit.

8.    RUTHERFORD is Graykey's principal. RUTHERFORD controls Graykey's operations and directs its agents.

9.    RUTHERFORD maintained numerous Graykey-affiliated companies in Washington, Arizona, and California. These affiliates include: Graykey Equity Seatac LLC; Graykey Equity Management LLC; Graykey Rosehill Senior Living LLC; Graykey Equity Investments LLC; Graykey Equity Southern Pacific LLC; and Graykey Equity Senior Living LLC. N. 83rd Properties LLC; Zenith Homes LLC; and Dawnwood Management LLC are three other businesses owned and operated by RUTHERFORD and his associates. These businesses are referred to collectively as the "Graykey Entities." RUTHERFORD owned and controlled each of the Graykey Entities.

Indictment - 3
*United States v. Rutherford*
USAO No. 2023R01190

10.     Broker 1 is a Washington-based real estate broker who operated as RUTHERFORD's agent for real estate purchases in Washington throughout the duration of the fraud.

11.     The "Seller Victims" are the property and business owners who sold their assets to RUTHERFORD, Graykey, or another Graykey Entity with promises of significant profit. RUTHERFORD and his affiliated companies purchased at least eighteen properties from Seller Victims using the scheme to defraud described herein.

12.     The "Lender Victims" are the private and hard money lenders from which RUTHERFORD and others obtained capital to purchase the subject properties.

13.     The "Subject Properties" are properties that RUTHERFORD purchased as part of the scheme and artifice to defraud described herein. The Subject Properties include properties in Washington State, specifically in Vashon, Lynnwood, Leavenworth, Puyallup, Longview, Tacoma, and Kent (the "Washington Subject Properties"). The Subject Properties also include a property in Murietta, California and other properties in California and Arizona.

### C. Manner and Means

The following conduct was part of the scheme and artifice to defraud.

>    i.     ***RUTHERFORD falsely marketed the Graykey Entities as successful companies with proven track records of developing adult family homes and other businesses.***

14.     In 2022 and 2023, RUTHERFORD's agent, Broker 1, approached at least seven individuals or couples in Washington who were trying to sell their homes or businesses. Around the same time, a different agent approached a couple hoping to sell a subject property in Murietta, California. At least two of these eight Subject Properties were existing adult family homes, subject to state licensing requirements. Four other properties were apartment buildings, boarding homes, or businesses. Two properties were

Indictment - 4
*United States v. Rutherford*
USAO No. 2023R01190

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

private residences.

15.    RUTHERFORD's agents told the sellers that the buyer, Graykey or another Graykey Entity, was a successful business funded by investors. The agents represented that the Graykey Entity buyer intended to modernize the existing adult family homes and bring in technology. On the other properties, the agents promised that the Graykey Entity would either convert the property into an AFH or use its expertise to develop and run the existing business. The agents represented the Graykey Entity had the money, staffing, and experience to assume control of existing businesses and quickly turn a profit.

16.    These claims were false and misleading. In reality, as described in more detail below, RUTHERFORD used and caused others to use fake bank statements and loan applications to trick Seller Victims and Lender Victims into thinking the Graykey Entity had the money to pay back loans and develop the Subject Properties. Then, the Graykey Entity financed purchases with a combination of seller-financing and hard money loans and defaulted on both sets of loans.

17.    RUTHERFORD also caused his agents to overstate RUTHERFORD's and his associates' training and ability to successfully operate and manage adult family homes. Neither RUTHERFORD nor his companies had the required licenses to run adult family homes in California, Washington, or Arizona, the states in which RUTHERFORD claimed to operate. Washington, California, and Arizona had no records of Graykey paying employees in those states. By 2022, RUTHERFORD already had a history of defaulting on loans in similarly structured deals. RUTHERFORD also omitted the fact that he had a prior fraud-related conviction.

18.    Broker 1 pointed sellers and agents to Graykey's website, www.graykeyequity.com, which several of the Seller and Lender Victims reviewed. The website displayed images of an assisted living facility in the "gallery" section of the website. Graykey claimed on the website that its "services" included palliative care,

Indictment - 5
*United States v. Rutherford*
USAO No. 2023R01190

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

memory care, and behavioral health.

19.    The images on Graykey's website did not depict Graykey-associated facilities, as the website implied. Instead, the images were pictures of an assisted living facility in California that is not affiliated with RUTHERFORD, Graykey, or any other Graykey Entity. RUTHERFORD used the gallery images without their owner's permission to make it seem like Graykey was a successful proprietor of adult family homes when it was not.

20.    The text on www.graykeyequity.com purporting to describe services that Graykey facilities offer was appropriated from legitimate healthcare providers. Graykey featured these descriptions to trick its victims into believing it was a well-established senior living facility company.

> **ii.    *RUTHERFORD used false pretenses to convince property owners to finance his property purchases with seller carry-back loans.***

21.    RUTHERFORD and his agents offered that one of the Graykey Entities would purchase the Subject Property, usually for asking price. The agent proposed that the seller fund part of the purchase with a seller-carry back loan.

22.    A seller carry-back loan (or seller financing) is when the seller loans the buyer money to purchase the property out of the seller's equity. The buyer typically pays part of the property's sale price through a down payment and then makes installment payments to cover the rest of the sale price. Here, the seller carry-back loan typically was between 39 and 65 percent of the ultimate purchase price of each Subject Property.

23.    At RUTHERFORD's direction, his agents used fake documents, false pretenses, and misrepresentations to convince the Seller Victims to provide financing on the transactions. Those lies and misrepresentations included but were not limited to:

24.    *Fake bank statements.* RUTHERFORD and those acting at his direction gave seller agents fake bank statements to convince sellers that Graykey had sufficient

Indictment - 6
*United States v. Rutherford*
USAO No. 2023R01190

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

capital to cover the seller carry-back loan, when it did not.

25.    For example, Seller Victim 1 sold a Graykey Entity an apartment building in Kent for approximately $2.2 million in the spring of 2022. Acting on RUTHERFORD's behalf, Broker 1 persuaded Seller Victim 1 to finance part of the purchase with a seller carry-back loan. Broker 1 provided Seller Victim 1's agent a Chase Bank statement showing $2 million in available funds as proof the buyer could repay the loan. The statement was doctored to make it look like the buyer had this money, when it did not. This document was instrumental in persuading Seller Victim 1's agent to recommend the deal.

26.    As another example, Seller Victims 4 (a married couple) sold their Murietta, California home to Graykey Equity Southern Pacific LLC for approximately $1.6 million in the winter of 2023. RUTHERFORD persuaded Seller Victims 4 to partially finance the transaction with a $700,000 seller carry-back loan. Seller Victims 4 asked Graykey Southern Pacific to provide proof of funding to give them assurance that Graykey could repay the loan. RUTHERFORD caused his agent to provide Seller Victims 4 with a bank statement from August 2022 purporting to show about $1.6 million in month-end funds. In fact, that account had about $56,830 at the end of August 2022. RUTHERFORD also caused his agent to provide a second bank statement from May 2022 that was doctored to falsely show $2 million in available funds.

27.    *Fake references.* Seller Victim 2 sold his boarding house in Tacoma to Graykey for $1.1 million in the spring of 2022. RUTHERFORD, through Broker 1, persuaded Seller Victim 2 to partially finance the transaction with a $550,000 seller carry-back loan. To ensure Graykey had the ability to repay the loan, Seller Victim 2 requested references for individuals who completed similar transactions with Graykey. Broker 1 sent Seller Victim 2 a list of names and telephone numbers. The references listed as a reference a person with the initials M.J. However, the telephone number listed

Indictment - 7
*United States v. Rutherford*
USAO No. 2023R01190

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

for M.J. was actually RUTHERFORD's telephone number.

28.   *Fake personal guarantees.* Seller Victim 2 also insisted that individuals associated with Graykey personally guarantee the seller carry-back loan. RUTHERFORD or someone acting at his direction added a note to the purchase and sale agreement (PSA) stating that K.G. would personally guarantee the second position seller carry-back loan. The note was initialed "K.G." K.G. is a real person, but she did not initial the note or personally guarantee the loan.

29.   *Graykey Website.* Several of the seller victims viewed the website, www.graykeyequity.com, which included false and misleading statements and images about Graykey's history operating adult family homes. Graykey's website helped convince these victims that Graykey was a legitimate and reliable company.

30.   The Seller Victims relied on these representations when extending credit to Graykey in the form of seller carry-back loans.

31.   The Seller Victims' seller carry-back loans generally were secured by deeds of trust on the subject properties. This gave the Seller Victims confidence that they could retake the properties if Graykey stopped making payments on their loans. But, as described in more detail below, Graykey further encumbered the properties with large hard money loans that had priority over the seller carry-back loans. This significantly impeded the Seller Victims' ability to retake their properties in the event of default.

### iii.   *The Graykey Entity obtained additional financing using the properties as collateral.*

32.   RUTHERFORD and others acting at his direction sought and obtained hard money loans on each of the Subject Properties in addition to the seller carry-back loans. "Hard money" loans are generally short-term, high-interest loans secured by property.

33.   Four different Lender Victims issued hard money loans on the Washington Subject Properties. The hard money loans typically carried an interest rate of more than

Indictment - 8
*United States v. Rutherford*
USAO No. 2023R01190

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

nine percent, and the loans were for between 40 and 82 percent of the sale price of the property. The hard money loans were secured by first-position deeds of trust on the Subject Properties.

34.    RUTHERFORD and those working at his direction used fake documents, false pretenses, and misrepresentations to secure the hard money loans. Those included, but were not limited to, the following:

35.    *Fake loan applications.* RUTHERFORD and those acting at his direction included false and fraudulent information in loan applications to secure financing on the Subject Properties. For example, Lender Victim 1 loaned N. 83rd Properties more than $1 million to purchase a Subject Property in Kent, Washington. RUTHERFORD and someone acting at his direction provided Lender Victim 1 a loan application that included false information about the borrower's identity, annual income, and cash on hand.

36.    *Fake bank statements.* Seller Victim 3 sold Graykey an adult family home located in Puyallup, Washington in the fall of 2022. Graykey financed the purchase in part with a hard money loan from Lender Victim 2. RUTHERFORD and someone acting at his direction provided Lender Victim 2 a statement from a Wells Fargo account purporting to show that a Graykey Entity had more than $1 million in available capital on May 1, 2022. This statement is fake. In fact, this Wells Fargo account had only $3,362.26 in available funds on May 1, 2022.

37.    Seller Victim 2 sold Graykey a boarding house located in Tacoma, Washington. Graykey financed that purchase in part with a hard money loan from Lender Victim 3. To show eligibility for the loan, RUTHERFORD or someone acting at his direction sent Lender Victim 3 two Wells Fargo statements showing that a Graykey Entity had more than $1 million in available cash on February 1 and March 1, 2022. Those statements are both fake. In fact, this Wells Fargo account had $231,067 on February 1, 2022 and $144,083.49 on March 1, 2022.

Indictment - 9
*United States v. Rutherford*
USAO No. 2023R01190

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

38.    Based on these and similar misrepresentations, Lender Victims 1 through 5 approved hard money loans on the subject properties.

39.    Securing financing in the form of hard money loans was integral to the scheme and artifice to defraud. RUTHERFORD and his entities did not have enough money to purchase the Subject Properties without this financing. In some cases, the buying Graykey Entity even obtained short-term, unsecured "transactional" loans to raise enough capital to purchase the subject property. In this way, RUTHERFORD was able to purchase many expensive properties in Washington State and elsewhere even though he had few financial resources. RUTHERFORD also used the hard money loan proceeds to create the appearance that the Graykey Entities were well resourced, when they were not.

> ***iv.    RUTHERFORD failed to properly disclose the amount and nature of financing on the Subject Properties to the Seller and Lender Victims.***

40.    RUTHERFORD and those acting with him concealed the existence and nature of the hard money loans from some of the Seller Victims. While some Seller Victims were aware that Graykey planned to finance a portion of the purchase, they did not know Graykey would obtain a high-interest, short-term hard money loan. Nor were the Seller Victims aware that the hard money loans would be for a significant percentage of the property's purchase price, and in some cases larger than the seller-carry back loan.

41.    The existence and terms of the hard money loans were material to the Seller Victims because as second-position lienholders, the Seller Victims' rights to reclaim the property on default were subject to the rights of the first-position lienholders (hard money lenders). The larger that first-position lien, the less likely that the Seller Victims could recoup the value of their loans in foreclosure if RUTHERFORD defaulted.

42.    RUTHERFORD and the Graykey Entity also concealed from some Lender Victims that the property was encumbered by a seller carry-back loan in second position.

Indictment - 10
*United States v. Rutherford*
USAO No. 2023R01190

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

RUTHERFORD and others acting at his direction caused several of the Lender Victims to receive incomplete PSAs and closing statements that omitted any reference to the seller financing.

43.     In some cases, this omission directly violated the loan agreements between the Graykey Entity and the Lender Victims. For example, the loan paperwork a Graykey Entity signed with Lender Victim 3 includes the following advisement on junior lenders: "NO Seller Financing. NO Carryback, NO Junior Liens, NO Seller Credit, NO Assignment Fees." The Lender Victims would not have approved the hard money loans had the Lender Victims known about the seller carry-back loans.

44.     To facilitate this part of the fraud, RUTHERFORD and others acting at his direction directed the escrow agencies to send incomplete closing statements to the Seller Victims and the Lender Victims. The closing statements the Seller Victims received did not disclose the hard money loans. The closing statements the Lender Victims received did not disclose the seller carry-back loans. Only RUTHERFORD and his associates received the combined seller and buyer statements that showed all the financing.

### v.     Graykey Entities used straw purchasers to sign loan documents.

45.     RUTHERFORD and others acting at his direction used the identity of third parties to apply for loans, sign LLC paperwork, and sign closing documents.

46.     For example, RUTHERFORD or someone acting at his direction used the name the person with the initials K.G. to sign PSAs associated with the Kent and Puyallup properties. The Puyallup sellers believed K.G.—a registered nurse—was an important part of the Graykey operation. However, K.G. was not an integral part of Graykey when either of these deals were negotiated and did not authorize RUTHERFORD to use her identity in this way.

47.     As another example, RUTHERFORD or someone acting at his direction used the name and identity of a person with the initials W.H. to obtain a loan from Victim

Indictment - 11
*United States v. Rutherford*
USAO No. 2023R01190

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Lender 1 on the Kent property. The application used W.H.'s name and birthday. It listed her annual income as $360,000 and stated she had a checking account balance of $1,020,000. W.H. never completed or signed the application. Further, the financial information is false in that W.H.'s account balance and income were below the stated amount.

48.    As another example, RUTHERFORD or someone acting at his direction used the name and identity of a person with the initials H.G. to sign a PSA for an adult family home Graykey purchased in Lynnwood. H.G. did not sign the PSA or authorize anyone to sign the PSA on his behalf.

49.    RUTHERFORD used these misrepresentations to convince the Seller Victims, the Lender Victims, and others that Graykey was large, sophisticated company with numerous well-resourced partners, affiliates, staff members, and stakeholders. RUTHERFORD also used these misrepresentations to distance himself from the fraud, enabling him to control the Graykey Entities without attaching his identity to relevant documents.

### vi.    *RUTHERFORD did not use the loan proceeds as promised.*

50.    For each Subject Property, the value of both loans together exceeded the purchase price of the property.

51.    To the extent they knew that the amount of financing exceeded the purchase prices, the Seller and Lender Victims believed the extra money would enable RUTHERFORD and the Graykey Entities to maintain and monetize the property and (when applicable) the business. This was material to the Seller and Lender Victims because the buyer needed a positive cash flow to repay the loans.

52.    However, RUTHERFORD and the Graykey Entities did not use the cash from escrow to rehabilitate or even maintain the Subject Properties. Rather, RUTHERFORD and others acting at his direction often used the funding excess to satisfy

Indictment - 12
*United States v. Rutherford*
USAO No. 2023R01190

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

existing debt on unrelated properties. For example, RUTHERFORD and those acting at his direction used the proceeds of the seller carry-back loan on the Vashon property to make interest payments on loans for the Kent; Murietta, California; and Puyallup properties, among others.

53.     In some cases, RUTHERFORD and his associates directed escrow agents to move money between escrow accounts on different properties to make it seem like the Graykey Entity contributed its own capital to purchase transactions, when it did not. For example, part of the down payment on the Vashon property came from the proceeds of the seller carry-back loan on the Lynnwood property.

54.     Other times, RUTHERFORD or one of his agents directed the escrow agents to pay one of RUTHERFORD's companies a consulting fee or buyer refund. In total, RUTHERFORD's companies received approximately $1 million in buyer refunds and consulting fees on the Subject Properties.

55.     Moving money in this way was essential to the scheme and artifice to defraud. It gave the victims the false impression that the Graykey Entity had sufficient capital to cover the cost of the purchase and repay various loans on the Subject Properties.

### vii.     *RUTHERFORD did not develop the Subject Properties.*

56.     RUTHERFORD and others acting at his direction told the AFH Victim Sellers that Graykey had the experience and capital to run adult family homes, including by obtaining the necessary licenses. Similarly, RUTHERFORD told the sellers on the Murietta, California property that the buyer Graykey Southern Pacific planned to convert the property into an adult family home, something that RUTHERFORD claimed Graykey had done successfully many times. However, as RUTHERFORD well knew, RUTHERFORD and his businesses lacked the training, licensure, experience or resources necessary to operate adult family homes.

Indictment - 13
*United States v. Rutherford*
USAO No. 2023R01190

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

57. RUTHERFORD and the Graykey Entities did not develop—or even maintain—the Subject Properties. As a result, several of them fell into disrepair, further damaging the Seller and Lender Victims, who had significant stakes in the properties by virtue of their stacked liens.

### viii. *The Graykey Entities defaulted on both sets of loans for the Subject Properties, harming the victims.*

58. The buying Graykey Entities carried at least two mortgages on each of the Subject Properties—the hard money loan and the seller carry-back loan. Each loan required the Graykey Entity to make interest-only payments for a relatively short period (usually between one year and eighteen months) followed by a balloon payment of the principal. Because RUTHERFORD lied about the Graykey Entities' financial liquidity to obtain the loans and their abilities to quickly develop and monetize the Subject Properties, the Graykey Entities did not make the required loan payments.

59. The Graykey Entities made some loan payments on several of the Subject Properties for the hard money and seller carry back loans. However, these payments were often late and incomplete. The Seller and Lender Victims frequently asked the Graykey Entities about the status of the loan payments. RUTHERFORD and others acting on his behalf made various excuses for the tardy payments, including but not limited to that the payment processor made a mistake and that RUTHERFORD was ill and unable to facilitate business.

60. RUTHERFORD and those acting with him eventually stopped making payments on the seller carry-back loans and the hard money loans for each of the Subject Properties. RUTHERFORD and his associates did not pay the balance on the seller carry-back or hard money loans.

61. The victims provided notices of default. In subsequent proceedings, the Seller Victims either retook the properties subject to the short-term, high-interest hard

Indictment - 14
*United States v. Rutherford*
USAO No. 2023R01190

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

money loan; re-took and resold the homes to recoup some of the money from the seller carry-back loans; the properties went into foreclosure and sold; or the properties were sold to another buyer.

62. On several occasions, RUTHERFORD and those acting at his direction attempted to forestall foreclosure sales through bankruptcy proceedings.

63. The result was significant harm to the Seller Victims. In each instance, the subject property did not sell for enough money to fully cure both the hard money loan and the seller carry-back loan. This was due in part to the Graykey Entities' neglect of or failure to develop the properties. As a result, the Seller Victims on eight of the Subject Properties lost more than $6 million.

64. RUTHERFORD defrauded and attempted to defraud additional victims located in Washington State, California, Arizona, among other states, using the same scheme and artifice to defraud.

C. Execution of the scheme and artifice to defraud

65. On or about the dates set forth below, for the purpose of executing and attempting to execute this scheme and artifice to defraud, RUTHERFORD, and others known and unknown to the grand jury, aiding and abetting each other, did knowingly transmit and cause to be transmitted, by wire communication in interstate and foreign commerce, the following writings, signs, signals, pictures and sounds, each transmission of which constitutes a separate count of this Indictment:

| Count | On or about date | Transmission |
|---|---|---|
| 1 | June 1, 2022 | Escrow agent initiates $150,055.06 wire transfer relating to the Tacoma Subject Property from Tacoma, Washington to Wells Fargo account X9284, located outside of Washington State. |

Indictment - 15
United States v. Rutherford
USAO No. 2023R01190

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Count | On or about date | Transmission |
|---|---|---|
| 2 | June 2, 2022 | Lender Victim 1 sends wire transfer relating to the Kent Subject Property in amount of $1,396,380 from Umpqua Bank Account X3579, located in Tukwila, Washington, to escrow agent's US Bank account X7676, located outside of Washington State. |
| 3 | July 22, 2022 | Electronic mail transmission relating to the Puyallup Subject Property sent from admin[@]graykeyequity.com, through Google servers located outside of Washington State, to Broker 1 located in Washington State. |
| 4 | September 6, 2022 | Lender Victim 2 sends wire transfer relating to the Puyallup Subject Property in amount of $910,000 from Umpqua Bank Account X1268, located in Tukwila, Washington, to escrow agent's U.S. Bank account X7676, located outside of Washington State. |
| 5 | January 27, 2023 | Broker 1 sends $25,000 wire transfer relating to the Murietta, California Subject Property from bank account with servers located outside of Washington State to escrow account at Harborstone Credit Union with servers located in Washington State. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

Indictment - 16
*United States v. Rutherford*
USAO No. 2023R01190

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## COUNT 6

### (Aggravated Identity Theft)

66. The allegations set forth in Paragraphs 1 through 65 of this Indictment are realleged and incorporated as if fully set forth herein.

67. On or about March 23, 2022, in Pierce County, within the Western District of Washington, and elsewhere, DARYLE JAWON RUTHERFORD did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person in connection with an offer to purchase the Puyallup Subject Property, and did aid and abet the same, that is, the name and electronic signature of K.G., a real person, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), that is, wire fraud, in violation of 18 U.S.C. § 1343, knowing that the means of identification belonged to another actual person.

All in violation of Title 18, United States Code, Sections 1028A and 2.

## COUNT 7

### (Aggravated Identity Theft)

68. The allegations set forth in Paragraphs 1 through 65 of this Indictment are realleged and incorporated as if fully set forth herein.

69. On or about April 25, 2022, in King County, within the Western District of Washington, and elsewhere, DARYLE JAWON RUTHERFORD did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person in connection with a loan application for the Kent Subject Property, and did aid and abet the same, that is, the name, birthday, and electronic signature of W.H., a real person, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), that is, wire fraud, in violation of 18 U.S.C. § 1343, knowing that the means of identification belonged to another actual person.

All in violation of Title 18, United States Code, Sections 1028A and 2.

Indictment - 17
*United States v. Rutherford*
USAO No. 2023R01190

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## **FORFEITURE ALLEGATION**

The allegations contained in Counts 1–7 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture. Upon conviction of the any of the offenses alleged in Counts 1–5, DARYLE JAWON RUTHERFORD shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), by way of Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the wire-fraud scheme alleged as part of the offense. Such property includes, but is not limited to, a sum of money, also known as a forfeiture money judgment, in an amount representing the proceeds of the wire-fraud scheme.

//

//

//

Indictment - 18
*United States v. Rutherford*
USAO No. 2023R01190

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Substitute Assets.** If any of the above-described forfeitable property, as a result of any act or omission of the defendant,

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction of the Court;

      d.     has been substantially diminished in value; or,

      e.     has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek the forfeiture of any other property of the defendant, up to the value of the above-described forfeitable property, pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL: *Yes*

DATED: *14 May 2025*

*Signature of Foreperson redacted pursuant to the policy of the Judicial Conference of the United States.*

_____

FOREPERSON

_____

TEAL LUTHY MILLER
Acting United States Attorney

_____

SETH WILKINSON
Assistant United States Attorney

_____

LAUREN WATTS STANIAR
Assistant United States Attorney

Indictment - 19
*United States v. Rutherford*
USAO No. 2023R01190